IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MARIA A. R.,

                              Plaintiff,

            v.                                        Civil Action No.
                                                      6:21-CV-0290 (DEP)


KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                              Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER M. HOBAICA           B. BROOKS BENSON, ESQ.
2045 Genesee Street
Utica, NY 13501

FOR DEFENDANT

SOCIAL SECURITY ADMIN.               CANDACE LAWRENCE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

U.S. MAGISTRATE JUDGE

DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in November of 1970, and is currently fifty-one years of age.  She was forty-seven years old at the time of her applications for benefits in November of 2017.  Plaintiff stands five-feet and two inches in height, and weighed between approximately one hundred and sixty and one hundred and ninety pounds during the relevant time period.  At the time of the administrative hearing, plaintiff reported living with her adult son and adult daughter in Utica, New York.

---

[2]    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

In terms of education, plaintiff graduated high school and completed three years of college education, but did not obtain a degree, although she reports earning a certificate in early childhood education. She most recently worked as a customer service representative and reports having left that position because of both her physical impairments and her anxiety.[3]

Plaintiff claims to suffer from physical impairments including a broken ankle, for which she underwent two surgeries, and back problems, as well as various mental impairments, including anxiety, depression, bipolar disorder, and psychosis. She has treated for these impairments with sources at Upstate Cerebral Palsy, Mosaic Health, Bassett Medical Center, Faxton-St. Luke's, and Syracuse Orthopedic Specialists.

Plaintiff contends that she is disabled as a result of the combination of her physical and mental impairments. In terms of her physical impairments, she alleges that she has pain and numbness related to her low back that make it difficult for her to stand or sit for long periods of time, as well as chronic throbbing and burning pain in her right ankle. For her ankle, she reports using a brace prescribed by her provider, a cane for

---

[3]    On March 7, 2018, plaintiff reportedly stated to consultative examiner Dr. Beth Halburian that she was fired from that position. *See* Administrative Transcript ("AT"), Dkt. No. 10, at 305.

walking to help with balance and stability, and elevating her leg throughout the day.  Plaintiff also claims to suffer from mental impairments, alleging that she experiences anxiety, difficulty focusing and concentrating, and poor memory.  She also reports panic attacks occurring at least once per week, difficulty being around people, and problems with handling stress.  The medications she takes for her impairments make her disoriented and cause her to gain weight.  Plaintiff states that her children do all of the chores around the house.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on November 17, 2017.  In support of that application, she claimed to be disabled due to a broken ankle, back problems, gallstones, anxiety, depression, bipolar disorder, and psychosis.

A hearing was conducted on January 3, 2020, by ALJ Paul D. Barker, Jr., to address plaintiff's applications.  ALJ Barker thereafter issued an unfavorable decision on February 26, 2020.  That opinion became a final determination of the agency on January 9, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.    <u>The ALJ's Decision</u>

In his decision, ALJ Barker applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Barker found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including arthritis of the right ankle status post right ankle surgery, degenerative disc disease, obesity, bipolar disorder, depression, and anxiety.  ALJ Barker further found that plaintiff's asthma, hypertension, and gallstones do not constitute severe impairments.

At step three, ALJ Barker examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, 12.04, 12.06.

ALJ Barker next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, with the following limitations:

> the claimant can lift and carry and push and pull 20
> pounds occasionally and 10 pounds frequently. She

5

can use foot controls occasionally with the right foot. The claimant can stand and walk for six hours of an eight-hour workday, for 30 minutes at a time, with the option to sit at the workstation for 10 minutes and continue working after 30 minutes of standing or walking. She can sit for six hours of an eight-hour workday. The claimant can occasionally stoop, climb ramps and stairs, and balance, and she can never kneel, crawl, crouch, or climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to pulmonary irritants. She can understand, remember, and carry out simple tasks and she can make simple work-related decisions. The claimant can have occasional work-related interactions with co-workers, supervisors, and the general public and she can have occasional changes in the work setting.

ALJ Barker next bypassed the determination of whether plaintiff has past relevant work to be considered at step four.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert regarding how plaintiff's limitations impact the occupations that she can perform, and concluded, based on the vocational expert's testimony, that plaintiff remains able to perform available work in the national economy, citing as representative positions collator operator, routing clerk, and sorter.  Based upon these findings, ALJ Barker concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on March 13, 2021.[4]  In support of her challenge to the ALJ's determination, plaintiff argues that (1) the ALJ erred in his assessment of whether plaintiff's right ankle fracture meets various applicable listings in the Listing of Impairments; (2) the RFC finding is not supported as to either plaintiff's physical or mental functioning based on the ALJ's errors in assessing the medical opinions and other evidence; and (3) the ALJ erred by relying on the vocational expert's testimony regarding the ability to perform work when considering the need for a sit-stand option.  Dkt. No. 15.

Oral argument was conducted in this matter, by telephone, on July 21, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc.*

---

[4]   This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation

8

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

      The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must

10

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.   <u>Analysis</u>

        1.   <u>The ALJ's Assessment of the Listing of Impairments</u>

Plaintiff first argues that the ALJ erred in finding that her ankle impairment does not meet or equal the requirements of Listings 1.02, 1.03, and 1.06 in effect at the time of the ALJ's decision.  Dkt. No. 15, at 13-17. Specifically, plaintiff argues that the ALJ's finding that she does not meet Listings 1.02 is not supported by substantial evidence, and that he failed to evaluate whether plaintiff met Listings 1.03 and 1.06.  *Id.*  Plaintiff is correct that the only of these listings that the ALJ specifically mentioned was Listing 1.02, and his analysis of the physical listings in general is admittedly

cursory, in that he states only that "[t]he medical evidence does not substantiate listing-level severity of the claimant's impairments, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment."  AT at 13.

Listing 1.02, entitled "major dysfunction of a joint(s) (due to any cause)" requires, as relevant to plaintiff's claim,

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in an inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.02.

Listing 1.03 requires "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.03.

Listing 1.06 requires "[f]racture of the femur, tibia, pelvis, or one or more of the tarsal bones[,] [w]ith (A) Solid union not evident on appropriate

12

medically acceptable imaging and not clinically solid; and (B) Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.06.

An "inability to ambulate effectively," as required by all three of these listings, is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities," and as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," with examples of ineffective ambulation being "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.00B2b.  In order to ambulate effectively, the claimant "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living,"

and "have the ability to travel without companion assistance to and from a place of employment or school."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.00B2b.

Regarding the ALJ's failure to specifically address Listings 1.03 and 1.06, any error resulting therefrom is at most harmless given that, in considering whether plaintiff meets or equals Listing 1.02, the ALJ necessarily had to consider whether plaintiff is unable to ambulate effectively, and so a finding that plaintiff does not meet that criteria as to Listing 1.02 would dictate a finding that she does not meet any of the mentioned listings.

Of note, although the ALJ did not specifically state as part of his listing finding that plaintiff is able to ambulate effectively as that term is defined by the listings, his findings in other areas of the decision sufficiently indicate that he indeed reached such a conclusion.  In his RFC determination, the ALJ found that plaintiff is capable of standing or walking for six hours in an eight-hour workday in thirty-minute increments, can occasionally climb ramps and stairs and balance, and does not require the use of a cane, all of which suggests the ALJ found plaintiff is capable of ambulating effectively.  AT 15.  In support of the RFC, the ALJ noted that plaintiff underwent a surgery in 2008 for repair of a nonunion fracture in her

14

right ankle, and that, although she has decreased range of motion, tenderness, and pain in that ankle, she did not seek significant treatment for that during the relevant period and she was prescribed a brace to address her concerns.  AT 16-17.  The ALJ also found the opinion of the consultative examiner, Dr. Elke Lorensen, to the effect that plaintiff has only mild limitations in prolonged standing and ambulating and does not require a cane for ambulation, to be persuasive.  AT 17-18.  The ALJ additionally found the opinion of state agency medical consultant Dr. D. Miller, who concluded that plaintiff can perform light work and does not require use of a cane, to be persuasive.[5]  AT 19.  The ALJ further stated that he found that the more extreme limitations opined by occupational therapist Raymond Alessandrini and Dr. Fatema Islam are not persuasive because they are based on plaintiff's unsubstantiated subjective reports and are not supported by the sources' own findings or consistent with the evidence in the record as a whole.  AT 18-19.  The ALJ lastly rejected Dr. Frederick Lemley's statement that plaintiff can perform sedentary work because the record does not document findings consistent with such a restricted ability to walk.  AT 20.  All of these findings make clear that the ALJ found that

---

[5]      As will be seen, in the report of her consultative examination of plaintiff, Dr. Lorensen also opined that plaintiff's use of a cane is not medically necessary.  AT 313.

plaintiff retains the ability to ambulate effectively.

Plaintiff's argument that she is unable to ambulate effectively is premised heavily on the opinion provided by Dr. Islam.  Dkt. No. 15, at 15-16.  However, as was noted briefly above, the ALJ found that Dr. Islam's opinion was not persuasive and accordingly did not rely on it.  As will be discussed in greater detail in the section regarding the ALJ's assessment of the opinion evidence, the ALJ's finding that Dr. Islam's opinion is not persuasive is based on a proper application of the relevant legal standards and is supported by substantial evidence, and the ALJ was therefore not required to adopt Dr. Islam's opinions indicating that plaintiff is unable to ambulate effectively.

Plaintiff also cites *Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 262-63 (2d Cir. 2021).  In *Demars*, the Second Circuit found error in the ALJ's assessment of whether plaintiff could ambulate effectively in the face of "extensive evidence" of "severe difficulty ambulating," where the ALJ instead relied on a treatment note indicating the plaintiff was able to walk a few steps in his doctor's office without using his assistive device.  *Demars*, 841 F. App'x at 262-63.  The case currently before me is distinguishable in three notable respects.  First, ALJ Barker did not rely merely on an observation by occupational therapist Alessandrini regarding plaintiff's

16

ability to stand or walk for short distances without a cane during that assessment, but on voluminous other evidence, including the observations and opinions from Dr. Lorensen and the state agency medical consultant. Second, this case is governed by the amended regulations for assessing opinion evidence that eliminated special deference to the opinions of treating physicians, whereas the decision in *Demars* depended in part on a finding that the ALJ should have afforded significant weight to the treating physicians' opinions.  Lastly, the evidence here, although reflecting ongoing issues with plaintiff's right ankle, as the ALJ acknowledged, does not contain the "extensive evidence" of "severe difficulty ambulating" that was present in *Demars*; rather, the record overall shows that, although at times plaintiff had some tenderness, limitations in range of motion and pain, with occasional notations that she had an antalgic gait and was using a cane during an examination, there was no objective evidence of significant difficulty ambulating.  *See e.g.*, AT 313-14, 318, 322, 341, 347, 358, 567, 687, 691, 710, 801.

Because the ALJ's decision as a whole shows that he found plaintiff is able to ambulate effectively, and because that finding is supported by substantial evidence, I find that the ALJ committed no error in assessing whether plaintiff meets or equals a relevant listing of presumptively

disabling conditions.

> 2. <u>The ALJ's Assessment of the Opinion Evidence and RFC</u>
> <u>Finding</u>
>
> a. <u>Physical RFC</u>

Plaintiff argues that the ALJ erred when assessing the physical component of the RFC, in part because he failed to evaluate various statements included in the opinion from Dr. Islam and failed to provide proper reasons supported by substantial evidence for finding the limitations that he did discuss to be unpersuasive.  Dkt. No. 15, at 17-23.  Plaintiff also argues tangentially that the ALJ erred in finding the opinion from Dr. Lemley to be unpersuasive, and in relying on the opinion of Dr. Lorensen regarding the need to use a cane.  Dkt. No. 15, at 21-22.  Plaintiff lastly argues that the ALJ's finding that she can stand or walk for thirty minutes at one time before sitting for ten minutes is not supported by substantial evidence because all of the opinions that specify durations for standing and walking indicate she is capable of doing so only for lesser time periods.  Dkt. No. 15, at 22-23.

In a form dated January 14, 2020, Dr. Islam noted that plaintiff has impairments including right ankle issues status post fracture and surgeries, back pain, left knee pain, bipolar disorder, posttraumatic stress disorder,

depression, anxiety, and asthma, and noted that plaintiff's current treatment consists of acetaminophen and her prognosis is fair.  AT 780.  She opined that plaintiff has maximum lifting and carrying capacities of two pounds, can sit thirty minutes at one time, stand ten minutes at one time, and walk five minutes at one time, cannot sit, stand, or walk even one hour in an eight hour workday, uses her cane all the time and cannot walk without it, needs to change postures frequently, can handle, finger and feel continuously, reach frequently and reach overhead occasionally, can never use foot controls with her right foot, never perform any postural activities other than occasionally climbing ramps and stairs, can frequently operate a motor vehicle and occasionally be exposed to humidity and wetness, but otherwise can never be exposed to environmental conditions or hazards. AT 782-85.  Dr. Islam further opined that plaintiff cannot travel without a companion for assistance or walk a block at a reasonable pace on rough or uneven surfaces, requires unscheduled breaks every thirty minutes due to her pain, would likely be off-task twenty-five percent or more of the workday, would likely be absent from work more than four days per month, and would need to elevate her legs greater than seventy-five percent of the workday.  AT 786-87.

The ALJ found this opinion to be unpersuasive because it is both

"wholly unsupported" by Dr. Islam's provided explanations and her own treatment notes, is based in part on the occupational therapist's evaluation that relied almost exclusively on plaintiff's subjective reports, and is not consistent with the other evidence in the record, including the other examinations and the course of treatment received by the plaintiff.  AT 19. While plaintiff provides multiple arguments why the reasons provided by the ALJ for his assessment of this opinion are erroneous, I find none of those arguments availing.

Plaintiff fails to identify any evidence that would be sufficient to undermine the ALJ's assessment that the extreme limitations opined by Dr. Islam are not supported by the record or consistent with Dr. Islam's own treatment records, which simply do not substantiate such extremely limited functioning or plaintiff's reports of completely debilitating pain.  As to the ALJ's notation that Dr. Islam's opinion is not persuasive because parts of it are explicitly based on the occupational therapy assessment, such reliance is not improper because the ALJ found that assessment itself was not persuasive.  AT 18.  Plaintiff argues that the ALJ was not permitted to reject that occupational therapy assessment, but nothing in her arguments undermines the ALJ's finding that (1) that assessment was premised in large part on plaintiff's reports of what she was able to do during testing

and thus the results were limited by her subjective willingness to complete the testing, and (2) the assessment was not consistent with the other evidence in the record.  Indeed, occupational therapist Alessandrini himself stated the following after completing his assessment:

> [h]er performance today of tests and results of testing were self-limited by her reports of increased subjective pain or difficulty with strength tests due to weights being 'heavy.'  Since pain is subjective in nature, this test cannot fully determine the impact that this has on her functional tolerance to activities.  Results of this test cannot accurately demonstrate her physical tolerances as she was limited due to reports of pain only.  Results of this test would be determined as her minimal physical tolerances to work activities with need to take into consideration her reports of marked to severe pain.

AT 707-08.  Because the ALJ found that plaintiff's reports of the extent of her pain are not fully consistent with the evidence in the record, there was nothing erroneous in the ALJ's finding this assessment to not be persuasive given that the source conducting the assessment himself recognized that it was a valid assessment of plaintiff's limitations only if her reports of pain were fully credited.

Plaintiff also argues that the ALJ improperly rejected Dr. Islam's opinion that a cane is medically necessary based only on the contrary opinion by consultative examiner Dr. Lorensen.  Dkt. No. 15, at 21.  However, the ALJ did not rely solely on Dr. Lorensen's opinion, but instead

based his rejection of Dr. Islam's opinion on this issue on the evidence in the record as a whole that showed that, although plaintiff presented using a cane on occasions, examinations did not reveal objective or other findings to suggest that she required a cane to ambulate, and indeed showed plaintiff's gait to be the same both with and without a cane.  Particularly under the amended regulations, where the opinions of treating physicians are no longer due any specific deference, an ALJ is fully permitted to choose between conflicting medical opinions based on his or her assessment of which opinion the record supports.  *See Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 185 (N.D.N.Y. 2019) (Hurd, J.) (noting that "it is the ALJ's responsibility to choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment") (internal quotation marks omitted).

Regarding limitations plaintiff alleges the ALJ did not address, she argues specifically that the ALJ failed to discuss Dr. Islam's statements that (1) plaintiff would need to elevate her left leg more than seventy-five percent of the workday, and (2) plaintiff would be absent from work more than four days per month because of her impairments.  *Id.* at 17-18. Although it is true that the ALJ did not specifically mention these limitations, such fact does not mean the ALJ failed to consider them.  AT 18; *see*

*Brault*, 683 at 448 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").  Notably, the ALJ recognized that Dr. Islam opined a "host of limitations, including" the ones that he specifically discussed.  *Id.*  Further, as was already discussed, the ALJ provided an assessment of why Dr. Islam's opinion as a whole was both unsupported by her own treatment notes and inconsistent with the record as a whole.  AT  18.  Because plaintiff has not pointed to any evidence to suggest that the ALJ's rationale is contradicted as relates to these two specific limitations, plaintiff has not shown that the ALJ's failure to specifically discuss these limitations was erroneous or in any way altered the outcome of the decision.

Plaintiff additionally argues briefly that the ALJ's rejection of the opinion of orthopedist Dr. Frederick Lemley is not supported by substantial evidence.  Dkt. No. 15, at 21-22.  In a treatment note dated April 22, 2019, Dr. Lemley stated that "I think she is capable of only sedentary activity. I believe she is disabled to some degree with regard to her ankle."  AT 568. The ALJ found this opinion to be unpersuasive because (1) it was rendered based upon only a single visit and is therefore not based on a longitudinal perspective of functioning, (2) Dr. Lemley did not support that assessment with any significant findings, and his examination on that one date showed

only an antalgic gait and use of a cane but no other significant abnormalities, and (3) it is not consistent with the other medical evidence of record.  AT 20.  I find no error in the ALJ's assessment.  In particular, although plaintiff disagrees with the ALJ's conclusion that Dr. Lemley's report failed to show significant abnormalities consistent with a restriction to sedentary work, I see nothing in that report to suggest the ALJ's interpretation on this matter is unreasonable or unsupported.  AT 566-67.  I also find nothing erroneous in the ALJ's finding that a limitation to sedentary work is inconsistent with the rest of the evidence.  Further, although not one of the factors the ALJ is required to articulate, the ALJ properly found Dr. Lemley's opinion to be less persuasive for being rendered after only a single initial visit, given that, as the ALJ discusses elsewhere in his decision, Dr. Lemley prescribed an ankle brace at that initial visit, the use of which was noted to result in decreased pain in a follow-up treatment record.  AT 17.  The fact that plaintiff's pain decreased with use of the brace suggests, as the ALJ found, that Dr. Lemley's opinion from that initial visit was in essence premature and weakened by not having the benefit of a longer period of evaluation.  As to the ALJ's finding that a cane is not medically necessary, I note that Dr. Lemley, although noting that plaintiff used a cane during the examination, did not opine that

she required the use of a cane, and, as was already discussed, the ALJ properly weighed the evidence in coming to the conclusion that a cane was not medically necessary.

Lastly, plaintiff argues that there is a lack of substantial evidence for the ALJ's finding that she can stand or walk for thirty minutes at one time before sitting for ten minutes because the only opinions that indicate concrete durations for the abilities to sit and stand at one time are those of Dr. Islam and occupational therapist Alessandrini, both of whom opined a much more limited ability.  Dkt. No. 15, at 22-23.  Plaintiff acknowledges that Dr. Lorensen opined that she has only a mild limitation for prolonged standing and ambulation, but argues that the vague nature of that opinion does not permit the ALJ to infer the ability to perform any specific exertional requirements.  *Id.*  However, an ALJ is not required to rely on an opinion for every specific limitation included in the RFC finding, but instead is tasked with assessing what limitations are warranted by the evidence in the record as a whole.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (noting that, where "the record contained sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required") (internal citations and quotation marks omitted).  In this instance,

the ALJ provided ample reasons supported by substantial evidence for declining to adopt the restrictions related to shifting positions opined by Dr. Islam and occupational therapist Alessandrini, as was already discussed above, and was not required to rely on those merely because they were the only sources that provided a specific opinion as to the duration of plaintiff's ability to stand or walk at one time.  Moreover, although Dr. Lorensen's opinion does not indicate what "mild" translates to in terms of minutes, her opinion still provides support for the adoption of a sit-stand limitation, and the limitation included by the ALJ for standing thirty minutes at a time before sitting for ten minutes is arguably more restrictive than Dr. Lorensen's opinion of only a "mild" limitation in prolonged standing or walking.  As plaintiff has failed to point to evidence that would undermine the ALJ's conclusion regarding the sit-stand option, I find no error in that finding.

Based on the foregoing, I find that the ALJ has not committed any error related to assessing plaintiff's physical RFC that would merit remand.

b.    Mental RFC

Plaintiff next argues that the ALJ erred in assessing the plaintiff's mental RFC by (1) failing to discuss how plaintiff's reaction to stress affects her ability to work and failing to include any limitations related to stress in

the RFC, and (2) failing to properly consider and account for plaintiff's documented need to be off task in excess of what the vocational expert testified would be tolerated in the workplace.  Dkt. No. 15, at 23-26.

Plaintiff's arguments regarding her mental capacities rely on various limitations opined by consultative examiner Dr. Beth Halburian, Registered Nurse ("RN") Donna Saville, nonexamining psychiatric consultant Dr. T. Bruni, and Dr. Islam.  However, plaintiff's arguments ignore the pivotal fact that the ALJ did not find that all of those opinion were persuasive.  In particular, the ALJ found the opinions of Dr. Islam and RN Saville to be unpersuasive, and the opinion of Dr. Halburian to be only partially persuasive.  AT 22-24.  The ALJ found Dr. Bruni's opinion to be largely persuasive, but determined that greater social restrictions were warranted based on the evidence as a whole.  AT 23.

In March of 2018, consultative examiner Dr. Halburian opined that plaintiff has no limitations in her ability to understand, remember and apply simple instructions and directions or to maintain hygiene or awareness of normal hazards; mild limitations in her abilities to understand, remember, and apply complex directions and instructions, to use reason and judgment to make work-related decisions, and to interact adequately with supervisors, coworkers and the public; and moderate limitations in her

abilities to sustain concentration and perform tasks at a consistent pace, to sustain an ordinary routine and regular attendance, and to regulate her emotions, control behavior, and maintain wellbeing.  AT 309.  The ALJ found that this opinion was partially persuasive, finding that the opined moderate limitations are generally consistent with Dr. Halburian's report and plaintiff's statements to her, but that the opined mild limitation in the ability to interact with others is not sufficiently limiting.  AT 22-23.

Later in March of 2018, after reviewing the record available at that time, including Dr. Halburian's report, Dr. Bruni noted various "moderate" limitations in the worksheet appended to his opinion, but ultimately concluded that those limitations did not prevent plaintiff from performing simple tasks.  AT 84, 87-88.  The ALJ found Dr. Bruni's opinion to be largely persuasive because it is explained by his narrative and consistent with the other records, although the ALJ again found that greater social limitations are warranted.  AT 23.

As part of her opinion from January of 2020 that was already discussed above, Dr. Islam opined, in relevant part, that plaintiff would be off-task twenty-five percent or more of the workday.  AT 786.  As was also already discussed above, the ALJ found this opinion unpersuasive as a whole.  AT 19.

Also in January of 2020, RN Saville opined that plaintiff is "unstable" and has no useful ability to function in most of the identified areas, with the exception of being "limited by satisfactory" in her abilities to interact with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  AT 790-91.  RN Saville additionally opined that plaintiff cannot cope with stress or changes.  AT 793.  The ALJ found that RN Saville's opinion was not persuasive because both her opinion and some of the explanations she provided on the opinion form are not supported by her own treatment records and are inconsistent with the other mental health evidence in the record.  AT 23-24.

I find no error in the ALJ's assessment of this evidence.  As was already discussed above, the ALJ provided reasons, supported by substantial evidence, for finding that the opinion from Dr. Islam is, as a whole, not persuasive, and those reasons apply equally to the opinion regarding off-task time.  I also find no error in the ALJ's rejection of RN Saville's opinion because, as the ALJ's discussion of the evidence makes clear, the almost total incapacity opined therein is grossly inconsistent with the treatment evidence of record that showed some ongoing mental difficulties, especially in response to life and family stressors, but also reflected that plaintiff is still generally able to function on a consistent basis.

AT 20-24.  Plaintiff's sole argument asserting error in the assessment of RN Saville's opinion is that "there is substantial evidence to support" that opinion, citing to various discrete, out-of-context phrases from RN Saville's treatment records.  Dkt. No. 15, at 25-26.  However, this argument amounts to little more than a request to reweigh the evidence.   Because I find that a rational decisionmaker would not be compelled to reach a different conclusion when considering the evidence here, plaintiff has not shown that the ALJ's finding lacks the support of substantial evidence.  *Brault*, 683 at 448.

Plaintiff's argument that a "moderate" limitation in the areas of concentration, persistence and pace or adapting or managing oneself means that the individual would be off-task twenty percent of the time is simply not persuasive.  Dkt. No. 15, at 24-25.  Plaintiff's argument relies on *Jennifer E. v. Comm'r*, 2020 WL 2059823 (N.D.N.Y. Apr. 29, 2020) (Baxter, M.J.).  However, to the extent that case can be read to support plaintiff's argument, I respectfully disagree with its rationale.  *See Lowry v. Comm'r of Soc. Sec.*, 15-CV-1553, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (Carter, M.J.) (rejecting argument that a moderate limitation in the ability to maintain a routine equates to being off-task twenty percent of the workday) (citing *Bembridge v. Comm'r of Soc. Sec.*, 15-CV-0745, 2016 WL

3777739, at *12 (N.D.N.Y. May 16, 2016) (Baxter, M.J.)).  A mere finding of

a "moderate" limitation, without other evidence in the record to support a

need to be off-task as a result of an individual's mental impairment, need

not be interpreted as denoting disabling impairment of functioning.  Rather,

as has been noted many times in this district, a moderate limitation is not

inconsistent with the ability to perform unskilled work.  *See Katherine Marie*

*S. v. Comm'r of Soc. Sec.*, 18-CV-0233, 2019 WL 1427456, at *9 (N.D.N.Y.

Mar. 29, 2019) (Dancks, M.J.) (stating that "courts within the Second Circuit

have routinely held that individuals suffering from 'moderate' difficulties with

memory, concentration, and handling stress could reasonably be found to

have the residual functional capacity to perform 'simple, routine and

repetitive tasks'") (internal alterations omitted).  Notably, Dr. Islam is the

only source who opined a need for plaintiff to be off-task a specific portion

of the workday; RN Saville did not provide an answer to the question about

off-task time on the form she completed, and Dr. Halburian opined only

moderate limitations in the ability to sustain concentration, pace, or an

ordinary routine.  AT 309, 793.  Dr. Bruni noted a few moderate areas of

limitation in his worksheet, but, again, ultimately concluded that plaintiff is

able to perform simple tasks even when accounting for those moderate

limitations.  AT 84.  Treatment records show that, with the exception of a

period between approximately November of 2017 and March of 2018, when plaintiff experienced a clear exacerbation of her mood symptoms in the form of manic presentations, plaintiff's mental impairments were generally stable with medication, although her mood and anxiety did fluctuate with the influence of life and family stressors.  *See e.g.*, AT 216-17, 220-303, 364, 367, 372, 382-83, 388, 394, 403, 411, 415, 418-19, 423, 425-26, 430-31, 436, 636, 637, 639, 641, 643, 645, 647, 649, 653, 695-96, 770.  The ALJ acknowledged that the evidence showed that plaintiff had some difficulties with concentrating at times, but that treatment records generally showed few difficulties in that respect from 2018 and later.  AT 14.  Simply put, I cannot say there is any error in the ALJ's exclusion of a significant limitation regarding off-task time, or his interpretation of the "moderate" limitations in Dr. Halburian's opinion, because his finding to the contrary is reasonable and supported by substantial evidence.

The ALJ appropriately relied on the opinions from Dr. Bruni and Dr. Halburian when formulating the mental RFC finding.  In particular, Dr. Bruni opined that plaintiff remains capable of performing simple tasks, a finding that the ALJ clearly adopted.  As to Dr. Halburian's opinion, the ALJ specifically found that her moderate limitations related to concentration, persistence, pace, routine, and attendance are consistent with reports of

difficulties with concentration and coping with situational stressors, and further stated that "[t]he [RFC] fully accommodates this part of her opinion by limiting the claimant to work where she can understand, remember, and carry out simple tasks, where she can make simple work-related decisions, and where she can have occasional changes in the work setting." AT 22-23. The ALJ therefore explained how he accounted for those moderate limitations in his RFC finding. Plaintiff has not persuasively argued that any specific additional limitations were required to account for the credible opinion evidence related to plaintiff's abilities to concentrate, attend, or respond to stress.

I note, moreover, that, contrary to plaintiff's argument, the ALJ did assess plaintiff's stress, the conditions that cause stress, and how it affects her functioning. *See Brittany F. v. Comm'r of Soc. Sec. Admin.*, 18-CV-1365, 2020 WL 838076, at *8 (N.D.N.Y. Feb. 19, 2020) (Baxter, M.J.) (noting that the ALJ must make "specific findings about the nature of the claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work"). In his findings at step three, the ALJ observed that plaintiff's performance on testing during the consultative examination was diminished as a result of her anxiety and nervousness, that she reported difficulty in handling stress, and that the record

documented some mood swings when plaintiff was faced with "significant situational stressors" particularly related to her family.  AT 13-14. Throughout the other portions of the decision, the ALJ discussed the medical records, including reports of depression or anxiety related to family and financial issues, and specifically acknowledged that records in 2019 showed that plaintiff was reporting "increased symptoms in the context of situational stressors," but was also "able to recognize triggers and distance herself and use coping strategies."  AT 20-22.  It is therefore clear that the ALJ considered the nature and effects of plaintiff's stress when interpreting the opinion evidence and formulating the RFC finding.

Based on the foregoing, I find that the ALJ has not committed any error related to assessing plaintiff's mental RFC that would merit remand.

### 3.    The ALJ's Reliance on the Vocational Expert's Testimony

Plaintiff lastly argues that the ALJ's step five finding is not supported by substantial evidence because (1) the hypothetical questions posed to the vocational expert did not account for the limitations opined by Dr. Islam, and (2) the ALJ could not rely on the vocational expert's testimony regarding the impact of a sit-stand option because "the [Dictionary of Occupational Titles ("DOT")] does not allow for a sit/stand option," and the vocational expert's testimony that plaintiff could perform the three jobs

cited, which testimony was based on her professional experience, "conflicts with the DOT."  Dkt. No. 15, at 27-28.  Both of these arguments fail to identify any error.

As to the first argument, the ALJ is required to account in his or her hypothetical questions only for limitations that are supported by the record. *See Wytrwa v. Comm'r of Soc. Sec.*, 15-CV-0286, 2016 WL 2937469, at *9 (N.D.N.Y. Apr. 28, 2016) (Baxter, M.J.) (noting that "there must be 'substantial record evidence to support the assumption upon which the vocational expert based his opinion,'" and concluding that the hypothetical question mirroring the RFC finding was supported by substantial evidence because the RFC finding itself was supported by substantial evidence) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).  As was already discussed, the ALJ provided proper reasons, supported by substantial evidence, for finding that the opinion provided by Dr. Islam is not persuasive.  Because the ALJ appropriately found that Dr. Islam's opinion does not reflect a persuasive assessment of plaintiff's functioning, the ALJ was not required to incorporate the opined limitations contained therein into either the RFC finding or the hypothetical questions to the vocational expert. *See Adriane W. v. Comm'r of Soc. Sec.*, 18-CV-0187, 2019 WL 1988747, at *11-12 (N.D.N.Y. May 6, 2019) (Dancks, M.J.)

(rejecting a similar argument).

As to plaintiff's second argument, there was no error in the ALJ's reliance on the vocational expert's testimony. The ALJ posed a hypothetical question to the vocational expert that is consistent with the RFC finding that he ultimately adopted, which included "an option to sit at the workstation for 10 minutes and continue working after 30 minutes of standing or walking." AT 69. In response to that hypothetical, the vocational expert testified that the three jobs identified could be performed and stated that the sit-stand option included specifically would not result in any erosion or reduction in job numbers. AT 69-70. The vocational expert further testified that, although the DOT does not address sit-stand options like the one contained in the hypothetical question, his answer regarding that hypothetical question was "based on [his] professional experience." AT 72. Plaintiff appears to argue that a vocational expert's professional experience is not a proper basis for resolving a conflict with the DOT. However, this argument fails for two reasons. First, the fact that the DOT is silent regarding a limitation such as a sit-stand option does not mean that there is a conflict between the expert's testimony and the DOT. *See Reisinger v. Comm'r of Soc. Sec.*, 16-CV-0428, 2017 WL 2198965, at *10-11 n.14 (N.D.N.Y. May 18, 2017) (Baxter, M.J.) (explaining that, "[w]here

there is an *actual* conflict between the VE's testimony and the DOT, it is logical to require the VE to explain why the plaintiff could still perform the particular job," but that "when the DOT is silent, the VE's opinion may be based upon his or her own experience, and there is no 'conflict' to resolve") (collecting cases).  Second, a vocational expert's professional experience has long been recognized as a proper basis for either supplementing the DOT or resolving conflicts between testimony and the DOT.  *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding no error in the ALJ's reliance on vocational expert testimony that was based on that expert's "professional experience and clinical judgment" regarding the effect of a need to change positions between sitting and standing at fifteen-to-thirty minute intervals).

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 18) be GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 15) be DENIED, the Commissioner's decision be AFFIRMED, and plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:   July 26, 2022
         Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge